UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:22-CR-63-HAB |
| ) | |
| DAVID RAMER ) | |

**OPINION AND ORDER**

Officers responded to a home occupied by Defendant on reports of an argument. The officers quickly pivoted to an investigation of drugs and guns. The fruits of that investigation were an unregistered short-barreled rifle ("SBR") and ammunition. As a result, Defendant stands accused of possessing an unregistered SBR in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, and of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

Defendant has moved to suppress all evidence obtained from the execution of the search warrant and for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). After the *Franks* issue was fully briefed, the Court ordered additional briefing on the suppression issue. The Court has now received and reviewed the additional briefing. Because officers had no legal reason to be where they were when they discovered the evidence that gave rise to the warrant application, the Court finds that there was no probable cause to support the issuance of the warrant. The Court also finds that the good-faith exception does not save the fruits of the illegal search. The motion to suppress will be granted.

**I.      Background Facts**

Consistent with the Court's legal standard, all facts come from the warrant application.[1] In May 2022, an employee of Fremont High School contacted Fremont Police Officer Travis Smoker

---

[1] "When, as here, the affidavit is the only evidence provided to the judge in support of the search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009).

("Smoker") and asked that Smoker check on a young woman sitting outside the school. Smoker responded to the high school and identified the woman as Laura Jean Tieman ("Tieman"). Tieman said that she wanted to get away from a "verbal domestic altercation"—an argument—with Cassandra Ann Daley ("Daley"). Tieman also said that Daley was at a residence on Evans Drive in Fremont.

At least four officers from three law enforcement agencies when to the Evans Drive residence to investigate the argument. The officers "made contact" with Daley "inside the attached garage" of the Evans Drive residence. It was then that Smoker smelled "the strong odor of raw marijuana." Smoker asked Daley about the smell. Daley denied knowing anything about it and consented to search her purse. Inside the purse Smoker found a silver metal smoking device containing burnt marijuana and a small hand rolled cigarette butt with the odor of burnt marijuana.

Based on this evidence alone, Smoker, through Steuben County Prosecutor Travis Musser, applied for and obtained a search warrant for the residence to look for "marijuana and associated paraphernalia." That search uncovered the firearm and ammunition that now support Defendant's charges.

## II.     Legal Discussion

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). Courts therefore regard the area "immediately surrounding and associated with the home"—what case law calls the curtilage—as "part of the home itself for Fourth Amendment purposes." *Oliver*

2

*v. United States*, 466 U.S. 170, 180 (1984). That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," *Hester v. United States*, 265 U.S. 57, 59 (1924), so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 213 (1986). An attached garage falls within these protections. *Lange v. California*, 141 S.Ct. 2011 (2021).

It appears undisputed that Smoker and the other officers entered the Evans Drive's attached garage to speak with Daley before obtaining a warrant. "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Such searches and seizures are permitted, however, when probable cause and exigent circumstances exist. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). The Government does not argue that either existed when Smoker and the other officers entered the garage.

Instead of the normal exceptions to the warrant requirement, the Government claims three justifications for entry into the garage. First, it argues that, since the garage door was open, officers could "look into [the] open garage from a vantage point on the public way." (ECF No. 35 at 6) (citing *Ciraolo*, 476 U.S. at 213). This is a correct statement of the law, but Smoker didn't simply peer into the garage from the street. Instead, he entered the garage, a physically intrusive search that takes this case outside the scope of *Ciraolo*. *Id*. at 213–14.

Next, the Government cites *United States v. Santana*, 427 U.S. 38 (1976), stating that "a person standing in the doorway of a home is as 'exposed to public view, speech, hearing, and touch

3

as if she had been standing completely outside her house." (ECF No. 35 at 6–7). Again, a correct statement of the law, but not what happened here.

*Santana* stands only for the proposition that an individual standing in the threshold of a dwelling is in a public place and therefore can be arrested upon a showing of probable cause. *Santana*, 427 U.S. at 42. The definition of "threshold" is extremely limited; the defendant in *Santana* was "standing directly in the doorway[,] one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id*. at 40, n.1. Daley was not in the doorway or the opening of the garage when Smoker smelled the marijuana. Instead, according to Smoker's affidavit, she was "inside the attached garage." That is not a public place under *Santana*. Even if it were, the core holding of *Santana* has little to do with the issues presented by Defendant.

Finally, the Government argues that Daley "impliedly consented to the officer's entry into the garage."[2] (ECF No. 35 at 7-8). Citing *United States v. Cota-Lopez*, 358 F. Supp. 2d 579 (W.D. Tex. 2002), the Government states that Daley "chose to voluntarily greet the officers, which, under the circumstances, any reasonable person would have taken to mean that [Daley] acquiesced to the entry of the officers." (ECF No. 35 at 7)

There are many problems with this argument. First, the facts offered by the Government do not appear in Smoker's affidavit. Nowhere in that document does Smoker state, or even suggest, that Daley "chose to voluntarily greet the officers." Rather, this fact appears to have been made

---

[2] As part of this argument, the Government notes that Daley did not ask the officers to leave or close the garage door. At least this part of the argument is factually accurate, but it does little to help the Government. The Government cites no case holding that a Fourth Amendment violation should be judged by the volume of the citizen's response. This is to say nothing of the absurdity in suggesting that Daley, a minor at the time of this incident, should have been expected to resist the entry of at least four uniformed officers.

from whole cloth in the Government's brief. Like the Government's other arguments, this one requires favorable facts that simply don't exist.

A reading of *Cota-Lopez* only weakens the Government's position. The relevant facts there were that:

> Upon approaching the Residence, the garage door to the Residence was open, but the officers could see the silhouette of a person standing behind the screen door inside the garage area. The officers continued toward the garage area and were greeted by Carmine Cota–Lopez ("Carmine"), Defendant Melchor's wife, who had opened a screen door to address them as they approached the garage. After Carmine greeted the officers, they entered the garage area and identified themselves by showing their police badges. The officers explained to Carmine that they were conducting a narcotics investigation and then asked for permission to enter the house to further discuss their investigation. Carmine took Detective Gutierrez's badge and invited the officers to enter the Residence.

*Cota-Lopez*, 358 F. Supp. 2d at 584-85. Again, other than the open garage door, none of those facts exist here. There is nothing in Smoker's affidavit that suggests that Daley approached the officers, greeted them, or invited them into the Evans Drive residence.

Legally, the district court in *Cota-Lopez* found it significant that there was no suggestion that "the officers, while in the garage, actually obtained additional evidence by which they seek to justify the subsequent entry into the Residence." *Id*. at 591. Not so here, where all the evidence used to support the warrant application was discovered while in the garage. The no-harm-no-foul aspect of the garage entry in *Cota-Lopez* raises the suggestion that the discussion the Government has chosen to tie its case to is dicta.

The Fifth Circuit's opinion affirming *Cota-Lopez* further diminishes any applicability to these facts. The circuit court doubled-down on the invitation: "Mrs. Cota-Lopez was not in custody, and she more than cooperated with the officers by greeting them and inviting them to approach and enter the garage and the residence." *United States v. Cota-Lopez*, 104 Fed. App'x

5

931, 933 (5th Cir. 2004). The horse is dead, but the Court will continue to beat it: there is no evidence of an invitation here.

Seeming to understand the weakness of Smoker's affidavit, the Government dropped a footnote in its most recent brief offering to "present additional evidence on [the garage entry], if considered appropriate by the court." (ECF No. 35 at 8, n.1). The Court does not consider it appropriate. First, because Smoker's affidavit was the only evidence presented to the issuing judge to support the warrant, the Court is not sure that it *can* consider other evidence. *See Bell*, supra. But more importantly, if Smoker had a legitimate, law enforcement reason to enter the garage, it would have been in the affidavit. This is especially true given the clear lack of probable cause or exigent circumstances. It is simply unbelievable that Smoker would have omitted the fact that Daley invited them into the garage. To hold a hearing now, or request other testimony, strikes the Court as little more than an invitation to Smoker to contour testimony consistent with this opinion.

Because the Court finds that the officers illegally entered the garage in the first instance, it now turns to whether the exclusionary rule should apply to suppress the firearm and ammunition. On this point the Government conducts a good faith analysis, consistent with *United States v. Leon*, 468 U.S. 897 (1984). But given the finding that the initial search was illegal, the Court concludes that a different analysis must apply—whether the firearms and ammunition were discovered via an independent source. *See Murray v. United States*, 487 U.S. 533 (1988).

The independent source doctrine provides:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position than they would have been in if no police error or misconduct had occurred . . . .. When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

6

*Nix v. Williams*, 467 U.S. 431, 443 (1984) (original emphasis). When evaluating whether the independent source doctrine applies when, as here, a warrant is issued after the illegal search, the "ultimate question" is "whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence." *Murray*, 487 U.S. at 542. The doctrine does not apply "if the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry." *Id*.

The Court's analysis on this point is straightforward. Even the Government concedes that "the plain reading of the affidavit is that Ofc. Smoker's basis for requesting probable cause was his observations and corroboration taking place inside the garage." (ECF No. 35 at 15). The Court agrees. Smoker's affidavit provides no evidence other than his observations while in the garage as a basis for the warrant. There was no independent basis for finding the firearm and ammunition, and that evidence must be suppressed.

### III.  Conclusion

For these reasons, Defendant's motion to suppress (ECF No. 26) is GRANTED. Defendant's request for a *Franks* hearing (ECF No. 27) is DENIED as moot.

SO ORDERED on August 22, 2023.

                            s/ Holly A. Brady
                            JUDGE HOLLY A. BRADY
                            UNITED STATES DISTRICT COURT